IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KENNETH H. SCATES, JR.
Plaintiff,

v.                                                                  No. CV 11-0589 CG

MICHAEL J. ASTRUE,
COMMISSION OF SOCIAL SECURITY,
Defendant,

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Kenneth Scates, Jr.'s *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 25), *Plaintiff's Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 25-1), *Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 26), and *Plaintiff's Reply Brief*, (Doc. 27).

Plaintiff Kenneth Scates, Jr. applied for Disability Insurance Benefits and Supplemental Security Income in April of 2007. Administrative Record ("AR") at 129. Administrative Law Judge ("ALJ") Frederick Upshall, Jr. denied benefits on October 20, 2009. AR at 14-25. Mr. Scates contends that the ALJ erred by failing to find that he suffered from the severe impairments of somatoform disorder and pain disorder. (Doc. 25-1 at 7-11). Mr. Scates further argues that the ALJ failed to consider all of the impairments established in the record in assessing Mr. Scates' residual functional capacity and that the ALJ's credibility analysis was not supported by substantial evidence. (Doc. 25-1 at 13-20). The Commissioner maintains that the ALJ applied the correct legal standards and that his findings were supported by substantial evidence. (Doc. 26 at 5-17).

Having considered the parties' filings, the relevant law, and having meticulously reviewed and considered the entire administrative record ("AR"), the Court finds that the ALJ did not apply the correct legal standards in Mr. Scates' case. Therefore, the Court will **GRANT** Mr. Scates' motion and **REMAND** the case to the Commissioner for further proceedings.

I. <u>**Standard of Review**</u>

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may

not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

  **II.**   **<u>Applicable Law and Sequential Evaluation Process</u>**

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity." At the second step, the claiming must show that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal

one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

#### a. Medical Background

Kenneth Scates, Jr. is a middle-aged man approaching 50 years old. He has a history of back, neck, and arm injuries and pain resulting from those injuries. He injured his arm in 1990 and the injury required two surgical procedures: a surgical decompression of the ulnar nerve and later a transposition of the same ulnar nerve. AR at 39, 268, 288. The injury and subsequent surgeries resulted in chronic neuropathic pain in his neck, right shoulder, right arm, and right hand. *Id.* at 268. Mr. Scates is right-handed. *Id.* at 39.

Mr. Scates' shoulder, neck, and arm injuries were compounded by a serious back injury suffered while at work in 2001. *Id.* at 17. Mr. Scates underwent vertebral fusion surgery at the L5-S1 level under the care of Dr. Claude Gelinas in order to treat the injury. *Id.* at 556. Mr. Scates began complaining of chronic pain in his back and legs within nine months of the surgery. *Id.* at 559-60. Noting a solid fusion of the vertebrae, Dr. Gelinas released Mr. Scates to light duty and prescribed him several pain medications. *Id.* at 560, 562. He also prescribed a special ergonomic chair to help ease Mr. Scates' back pain. *Id.*

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

at 556.

In the years following the surgery, Mr. Scates continued to suffer from chronic pain resulting from the back injury as well as the ulnar surgeries. Under the care of his primary physician, Dr. R.E. Pennington, Mr. Scates was treated regularly for pain management at the Adobe Medical Center in Roswell, N.M. The medical records indicate approximately sixty medical appointments at Adobe between 2003-2008, with the majority of the care being provided between 2005-2007. (Doc. 25-1 at 5); *see, generally,* AR at 246-352. Dr. Pennington diagnosed Mr. Scates with chronic tardive ulnar palsy, status post surgical release, cervical and thoracic myofascial pain with trigger points, cervical facet syndrome, as well as chronic back pain syndrome with post-lumbar laminectomy resulting from failed surgery. *See, e.g.,* AR at 246, 288, 340.

Dr. Pennington attempted to treat Mr. Scates' continuing pain and muscle spasms with several different types of medications, including Baclofen and Zanaflex, as well as narcotic pain medications such as Oxycontin and Oxycodone. *See, e.g.*, *Id.* at 235, 247. He also administered epidural trigger point injections, electrical stimulation, and physical therapy. *Id.* at 18, 288. Despite frequent treatment, Mr. Scates continued to complain of persistent pain. *See, e.g.*, *Id.* at 333. By August of 2008, with the medication offering limited relief, Dr. Pennington opined, "I do feel that [Mr. Scates] is in chronic intractable pain." *Id.* at 568.      In addition to the physical impairments in Mr. Scates' shoulder, neck, and back, he also received treatment for several mental health disorders, including major depressive disorder and bipolar affective disorder. *Id.* at 17-18; 427, 446. He also struggled with addiction to alcohol and cannabis though he apparently overcame those addictions. *Id.* at 43-44, 527. He was hospitalized for suicide attempts or suicidal ideation in 1994 and

2007. *Id.* at 18, 360. The depression stemmed from his prior divorce and many injuries; it resulted in feelings of helplessness and low self-worth. *Id.* at 360, 523, 527. Mr. Scates complained that the depression and bipolar disorder greatly reduced his ability to concentrate. *Id.* at 34, 37. Mr. Scates received sporadic mental health treatment at Counseling Associates Inc. *Id.* at 18. He participated in therapy sessions and was prescribed several medications, including Abilify, Cymbalta, Neurontin, and Wellbutrin. *Id.* at 522. Clinicians at Counseling Associates assigned Mr. Scates a Global Assessment of Functioning ("GAF") score of 52 in 2008. *Id.* at 529.[2]

     Dr. Carl Adams performed a consultative psychological evaluation of Mr. Scates in September of 2007, a few months after his second hospitalization for suicidal thoughts. *Id.* at 427-30. Despite Mr. Scates' claim that the mental health disorders affected his ability to concentrate, Dr. Adams found that he had no limitations in understanding and remembering detailed or complex instructions. *Id.* at 429. He did find that Mr. Scates had mild limitations with concentration and task persistence and mild to moderate limitations in social interactions with the public, coworkers, or supervisors. *Id.* He also found mild to moderate limitations in adapting to changes in the work setting. *Id.* Dr. Adams assigned a GAF score of 60 and diagnosed him with mood disorder relating to his back pain, mild bipolar disorder, pain disorder (not otherwise specified), somatoform disorder (not otherwise specified), and personality disorder with passive/aggressive traits. *Id.* at 429-30.

---

[2] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagonostice and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000) (*DSM-IV*). A GAF score of 51-60 indicates "moderate symptoms," or "moderate difficulty in social, occupational, or school functioning."

Mr. Scates' mental health records were also reviewed by a state-agency non-examining psychiatrist, Dr. Jill Blacharsh. *Id.* 454-57. She agreed with Dr. Adams that Mr. Scates was not limited in his ability to understand or follow complex instructions. *Id.* at 454. She also found that Mr. Scates was moderately limited in his ability to work in coordination with others and that he was moderately limited in his ability to interact with the public, coworkers, and supervisors *Id.* at 454-55. She found that Mr. Scates' physical pain and mental health symptoms were not precisely explained by diagnostic criteria and she therefore diagnosed him with somatoform disorder (not otherwise specified), and pain disorder (not otherwise specified). *Id.* at 464. She also diagnosed him with bipolar disorder, mood disorder, and personality disorder with passive/aggressive traits. *Id.* at 456, 458, 465.

### b. Hearing Before the ALJ

Mr. Scates filed his application for benefits in April of 2007, claiming that his disability began July 1, 2004. After being denied benefits at the state level, he appeared before ALJ Upshall for a hearing on March 30, 2009. *Id.* at 26. A vocational expert ("VE") named Shelly Eike appeared telephonically and testified at the hearing. *Id.* at 14. The hearing initially focused on Mr. Scates' vocational history. He testified that he had worked exclusively as a computer assisted draftsman since sustaining his back injury. *Id.* at 32. He would work on his computer from home drawing up floor plans and electrical plans for houses. *Id.* He stated that he charged approximately $800 per job but that he was not particularly successful, never making more than five or six thousand dollars a year and frequently less. *Id.* at 33-34, 38-39.

Mr. Scates testified that he was capable of working 30-40 hours a week, but only at his own pace. *Id.* at 32-33. While he could work 8 hours a day, he was sometimes limited

to no more than five hours a day because of his pain and inability to concentrate. *Id.* at 32-34. He used the orthopedic chair prescribed by Dr. Gelinas while working but could only sit for an hour at a time before the pain forced him to move around, lie down, or stretch for approximately 5-10 minutes. *Id.* at 33. He stated that his arm and neck pain from the ulnar surgeries affect his ability to work because his right hand would become tight and painful or experience muscle spasms if overused. *Id.* at 39-40. He testified that he had serious difficulties concentrating because of his depression and the side effects of his medications. *Id.* at 33-34, 37, 44.

The ALJ then posed a series of hypothetical questions to VE Eike regarding Mr. Scates' ability to find gainful employment in the local economy. He asked Ms. Eike to imagine a person with Mr. Scates' education, age, and work history who would be able to sit for no more than one hour before taking a 5-10 minute break and would be limited to either occasional or frequent manipulation and fingering with his right hand and arm. *Id.* at 51-55.[3] Having considered those restrictions, VE Eike testified that such an individual could perform the jobs of small parts assembler and small parts inspector, both of which were available in sufficient numbers in the national and local economy. *Id.* at 54-55.

### c. ALJ's Decision

After considering Mr. Scates' medical records, vocational history, and the hearing testimony, ALJ Upshall decided that Mr. Scates did not qualify for disability benefits under the Social Security Act. *Id.* at 14-25. The ALJ found that Mr. Scates had the following

---

[3] ALJ Upshall changed the hypothetical several times while questioning the VE. He changed the limitation on fine manipulation with the right hand from "occasional" to "frequent" and later asked the VE to assume that the individual would be limited to "simple one-to-two step tasks." AR at 53-55.

severe impairments: chronic back pain, status post remote lumbar fusion surgery, chronic ulnar nerve palsy, status post cubital tunnel release surgery, cervical degenerative disc disease, major depressive disorder, and bipolar disorder. *Id.* at 16-17. The ALJ found that none of the impairments met the definition of a listed impairment and therefore moved on to assess Mr. Scates' residual functional capacity. *Id.* at 19-21.

The ALJ found that Mr. Scates retained the residual functional capacity to perform sedentary work except that he could sit for no more than one hour at a time before taking a five-to-ten minute break to stretch or move around. *Id.* at 21. He also found that Mr. Scates was limited to frequent use of his arm for fingering and fine manipulation. *Id.* Despite having found that Mr. Scates suffered from two severe mental health impairments - major depressive disorder and bipolar disorder - the ALJ found that those impairments had no more than a *de minimis* effect on his ability to work and did not warrant a limitation under the RFC. *Id.* at 22-23. The ALJ further rejected Mr. Scates' complaints of intractable pain, finding that his interactions with Mr. Scates as well as the medical records and vocational history suggested that his pain was not so severe. *Id.* at 17-18, 22-23.

The ALJ concluded that Mr. Scates' RFC assessment did not prevent him from performing his past relevant work as a computer assisted draftsman. *Id.* at 23-24. He also concluded that Mr. Scates was capable of working as a small parts assembler and small parts inspector, both of which are present in significant numbers in both the national and regional economy. *Id.* at 24.

**IV.    Analysis**

Mr. Scates claims that the ALJ's decision is flawed in several respects. Mr. Scates first claims that the ALJ erred in failing to list somatoform disorder and pain disorder as

severe medical determinable impairments at step two of the sequential evaluation process and for failing to consider them when formulating his RFC determination. (Doc. 25-1 at 8-11). He argues that, had the ALJ properly considered these disorders, it would have bolstered Mr. Scates' subjective complaints of pain and would have changed the ALJ's credibility analysis regarding Mr. Scates' level of pain. (*Id.* at 9-11). Mr. Scates further argues that the ALJ's RFC determination was not supported by substantial evidence because it did accurately reflect Mr. Scates' ability to work or his mental interactive limitations. (*Id.* at 11-13, 18-20). He also claims that the ALJ's credibility determination is not supported by substantial evidence. (*Id.* at 13-18).

Defendant argues that the ALJ properly rejected the somatoform and pain disorder diagnoses and that his RFC and credibility determinations are supported by substantial evidence. (Doc. 26 at 5-13). Defendant further claims that inasmuch as some of the ALJ's findings may have been contradictory or unclear, those failures amount to harmless error. (*Id.* at 15-17).

      **a.**    **Inclusion of Somatoform and Pain Disorders**

In formulating a claimant's RFC, the ALJ must consider all of the claimant's symptoms and determine the extent to which these symptoms can reasonably be accepted with the objective medical evidence. *See* 20 C.F.R. 416.929; SSRs 96-4p; SSRs 96-7p. The ALJ must therefore always consider and address medical source opinions in the record. *See* SSR 96-8p.[4] The opinions of Dr. Adams and Dr. Blacharsh are considered

---

[4] Though social security rulings do not necessarily carry the force of law, they are entitled to deference. *See Fagan v. Astrue*, 231 F.App'x 835, 837 (10th Cir. 2007). Indeed, the particular strictures of SSR 96-8p have been explicitly endorsed by the Tenth Circuit in several unpublished opinions. *See Alexander v. Barnhart*, 74 F.App'x 23, 28 (10th Cir. 2003)

medical source statements by the Social Security Administration and those opinions must be addressed by an ALJ in formulating an RFC. *See* SSR 96-6p ("Findings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources [and] Administrative law judges . . . may not ignore these opinions."). If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8p. Furthermore, the ALJ's decision must give "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion." *Langley*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004); 20 C.F.R. § 416.927(d)(2). Failure to comply with these regulatory requirements requires remand. *Robinson v. Barnhart*, 366 F.3d 1078, 1082-83 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

In this case, ALJ Upshall failed to properly consider Dr. Adams' and Dr. Blacharsh's diagnoses of somatoform disorder and pain disorder in formulating Mr. Scates' RFC and in evaluating Mr. Scates' subjective complaints of disabling pain. Somatoform and pain disorders are characterized by "psychological factors contributing to perception of pain." *See, e.g.*, *Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (citing SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, 640 (1978)); *see also Tolbert v. Chater*, 1997 WL 57091 at *1 n.2 (10th Cir., Feb. 11, 1997) (noting that somatoform pain disorder is indicated

---

(unpublished); *Southard v. Barnhart*, 72 F.App'x 781, 784 (10th Cir. 2003).

11

"where pain is the predominant complaint, the pain is of sufficient severity to warrant clinical attention, causes significant impairment in social or occupational functions, and is not better accounted for by a mood, anxiety, or psychotic disorder.") (citing Am. Psychiatric Ass'n, *Diagonostice and Statistical Manual of Mental Disorders* 458-462 (4th Ed. 1994)) ("DSM"). The diagnosis of somatoform and pain disorders by two separate doctors is significant since the severity and source of Mr. Scates' pain played a significant role in the ALJ's formulation of Mr. Scates' RFC. *See* AR at 22 (in assessing Mr. Scates' RFC, the ALJ acknowledged that Mr. Scates was diagnosed as suffering from "chronic intractable pain," but he stated that "there have been little in the way of objective findings to account for the claimant's pain."). The ALJ's consideration of Dr. Adams' and Dr. Blacharsh's diagnosis therefore appears to be of considerable import in determining whether the ALJ's decision should be upheld.

In his decision, the ALJ failed to meaningfully address the two doctors' diagnosis of somatoform disorder and pain disorder. While the ALJ acknowledged that Dr. Adams had diagnosed Mr. Scates with somatoform disorder and pain disorder, he failed to explain whether he considered that diagnosis and never explained what weight he gave to that specific findings. *Id.* at 19. He ignored Dr. Blacharsh's diagnosis of somatoform and pain disorders entirely. The Tenth Circuit has held that an ALJ's failure to consider a diagnosis of somatoform disorder or to substantially support the decision to reject such a diagnosis is reversible error. *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (holding that the ALJ must consider whether a diagnosis of somatoform disorder affected the

claimant's subjective complaints of pain);[5] *Tolbert,* 1997 WL 57091 at * 3 ("We conclude that the ALJ erred in rejecting Dr. Hickman's diagnosis of somatoform pain disorder without providing any explanation for doing so, and that this error infected his evaluation of Ms. Tolbert's subjective complaints of pain and, therefore, his evaluation of her credibility . . . [This] failure to discuss or consider uncontroverted, probative evidence of disability requires us to reverse and remand . . .").

By failing to explain why he was not accepting Dr. Adams' diagnosis of somatoform and pain disorder, the ALJ left no record upon which the Commissioner or the Court can rely to determine whether these disorders affected Mr. Scates' perception of his physical pain or his residual functional capacity to work. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) ("If objective medical evidence shows a pain-producing impairment, the ALJ then must consider the claimant's allegations of severe pain and decide whether she believes them."). The ALJ compounded this error by failing to mention Dr. Blacharsh's diagnosis of somatoform disorder and pain disorder altogether. Dr. Blacharsh is considered an expert in the evaluation of disability claims and, as such, her findings of fact must be addressed by the ALJ. SSR 96-6p. Not only was the ALJ's failure to consider Dr. Blacharsh's findings legally incorrect, it is also significant since her report corroborated Dr. Adams' opinion that the two disorders exacerbated or helped cause the persistent symptoms which Mr. Scates complained of. *See* AR at 464 (Diagnosing somatoform disorder and pain disorder to account for Mr. Scates' "[p]hysical symptoms for which there are no demonstrable organic

---

[5] It should be noted that, in *Winfrey*, the ALJ actually gave a reason for rejecting the relevant physicians' diagnosis of somatoform disorder - a reason the Tenth Circuit found to be unsupported by caselaw. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). In this case, ALJ Upshall gave no reason for ignoring the somatofom and pain diagnoses at all.

findings or known psychological mechanisms . . ."). Because her diagnosis echoed that of Dr. Adams, it would have been entitled to greater weight by the ALJ. *See* 20 C.F.R. § 416.927(d) ("[W]e will weigh every medical opinion we receive . . . [g]enerally, the more consistent an opinion is with the record as a whole, the more weight will be given to that opinion.").

### b. Defendant's Response

The Commissioner does not dispute that the ALJ failed to address Dr. Adams' and Dr. Blacharsh's diagnoses of somatoform and pain disorders. He nevertheless argues that this does not constitute reversible error. First he claims that Mr. Scates has cited no authority for the position that somatoform and pain disorders are "pain producing impairments." (Doc. 26 at 5). This is untrue - Mr. Scates has cited to two Tenth Circuit cases where the court explicitly agreed that somatoform disorders are psychological conditions which affect and distort a patient's perception of physical symptoms. *Winfrey*, 107 F.3d at 1021-22; *Tolbert*, 1997 WL 57091 at *1 n.2 ("Assuming the diagnosis of somatoform pain disorder is correct, the pain symptoms are not intentionally produced or feigned."). Both the DSM and Social Security regulations recognize somatoform disorders as those which produce "physical symptoms for which there are no demonstrable or organic findings or known physiological mechanisms." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07.

The Commissioner then tries to argue that the Tenth Circuit's holdings in *Winfrey* and *Tolbert* do not require reversal because the facts in those cases are distinguishable from those presented in Mr. Scates' appeal. For example, he argues that the claimant in *Winfrey* was "extremely somatically preoccupied" and that the medical tests in *Tolbert* were

consistent with individuals who "try to use histrionic defense mechanisms, and those whose physical complaints have hysterical qualities." (Doc. 26 at 5-6 (citing *Winfrey*, 92 F.3d at 1022; *Tolbert,* 1997 WL 57091 at *1)). By contrast, he argues that Mr. Scates' medical records do not demonstrate the same degree of psychological preoccupation with pain. (*Id.*). In the Commissioner's opinion, Dr. Adams' and Dr. Blacharsh's records do not "suggest that Plaintiff's symptoms were a manifestation of his mental impairments." (*Id.* at 6).

The Commissioner's argument must be rejected since neither the ALJ, the Commissioner, or the Court is entitled to interpose its own medical opinion over that of a physician. *Kemp v. Brown*, 816 F.2d 1469, 1476 (10th Cir. 1987). Dr. Adams and Dr. Blacharsh both diagnosed Mr. Scates with somatoform disorders and the Commissioner's subjective belief that they were probably wrong is immaterial. More importantly, the argument fails because it does not address the critical error in this case - the fact that the ALJ ignored the somatoform and pain disorder diagnoses in his decision and gave no explanation for doing so.

Moreover, the Commissioner's subjective opinion that Mr. Scates does not actually suffer from somatoform and pain disorders must be rejected because it constitutes a post-hoc rationalization of the ALJ's initial error. Due to the administrative nature of social security proceedings, the parties on appeal to the District Court are limited to the facts and opinions affirmatively established by the ALJ in his or her opinion. *Haga v. Astrue*, 842 F.3d 1205, 1207 (10th Cir. 2007) (Courts "may not create or adopt post-hoc rationalizations to support the ALJ's decisions that are not apparent from the ALJ's decision itself."); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming [a] post-hoc effort to salvage the

ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). It may be that, upon review, the ALJ properly determines that Dr. Adams' and Dr. Blacharsh's diagnoses are not supported by the record as a whole. But this is not an assumption that the Court or the Commissioner is entitled to make. Unless and until the ALJ has an opportunity to consider the validity of the somatoform and pain disorder diagnoses and any potential effect it might have on Mr. Scates' RFC and credibility determination, the Court is bound to remand.

Because the Court finds that the ALJ erred in failing to explain what weight should be given to Dr. Adams' and Dr. Blacharsh's diagnosis of somatoform and pain disorders, the Court need not address Mr. Scates' remaining allegations with the regard to the ALJ's RFC assessment and credibility determinations.

**IT IS HEREBY ORDERED THAT** Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 25) is **GRANTED** to the extent that it seeks remand for rehearing. This matter shall be remanded to the Commissioner of Social Security for a hearing consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE